We will now hear argument in the case of United States v. Ceja and I believe that the appellant is Carlton Gunn, is that correct? Yes, your honor. Very well, and Mr. Roach is with the AUSA, right? Yes, your honor. Very well, all right. Mr. Gunn, please proceed. Thank you very much, your honor. I'm going to start with the jury waiver issue. You have existing case law that requires reversal in this case. First, you have cases that require four advisements about the jury right when there are what the cases label salient facts that should put a court on notice a defendant might understand the right. Second, you have cases that identify an inability to speak English as one such salient right. Third, you have case law that says an invalid jury waiver is structural there. Take that case law and apply it here. We have the salient fact of an inability to speak English. You also have, by the way, Mr. Ceja having only an eighth grade education in a council. Is there any indication in the record from the proceedings leading up to this point that the defendant was unable to communicate with the court? I understand he had a translator, but that's an interpreter. That's common. That happens all the time, and we rely on those services. So I'm just curious, is there any indication in this record that would put the district judge on notice that this defendant isn't tracking the communication? There's a interpreter? Correct, because we don't just assume that because someone speaks another language, they're inherently not going to understand anything. That's why we give them an interpreter. Well, they understand the words. The question here is whether they understood the nature of the jury right. And what Duarte Higuereta says is that not speaking English is a salient fact that should put a court on notice. The defendant needs more of an explanation of the jury right. Your position is a categorical position. Every time that you have a defendant who is not a native English speaker and is using the services of an interpreter, that a fuller process has to happen on the assumption that they're not understanding. That's correct, but that's what Duarte Higuereta and Shorty hold, Your Honor. And there's good reason for that, especially with the aspects of the jury waiver that were left out here. I'm not sure that that's right, because if I the person in writing but in English with no translation of that provided. So we have a different scenario where clearly we've got a language barrier. That's not our scenario here. Well, we do have a language barrier here because there was in the sense of the defendant didn't speak English and needed an interpreter. But in Shorty, he was not given translation of the written document. In our case, he was given an interpreter for everything that was said. In Shorty, Your Honor, he spoke English. The problem in Shorty... Maybe I have the case wrong. Yeah. Duarte Higuereta is the case where he didn't speak English. And Duarte Higuereta recognized that that was a salient fact that required a more in-depth colloquy. And then Shorty explained that further and reiterated that. And I think the reason, Your Honor, is that inability to speak English shows the defendant isn't from our culture and hasn't been educated in our culture. And if you think about the two aspects of the jury right that were left out here, there's something that the things that are really unique to our criminal justice system that a person from another culture wouldn't understand. The two aspects that were left out were that the 12 jurors would be drawn from the community. They weren't these specialized fact-finding panel. And that the defendant would be allowed to participate in the selection process. Counsel, with respect, maybe you deal with a lot more well-informed and intelligent people than I do. But I find that the population of the United States generally is abominably uninformed about almost anything related to the judicial system and especially the criminal system. So I'm a little troubled with the idea that because a person doesn't speak English as his or her mother tongue, that you have to explain what you just talked about and that it will make a difference. Because I don't know that they're going to understand anymore because they come from an entirely different culture and understand it at all. Help me with that. What am I missing? Well, I think the difference between someone from our culture and someone from another culture, Your Honor, is in this culture we have a long history and sort of principles of the idea of citizens standing as a barrier between citizens and the government. But the public schools don't even teach history anymore. They don't know how the government's organized. They don't know about the Constitution. They don't know anything. So that's what I'm struggling with. Why do we treat our people who are born here any differently than the people who aren't? Because I think in our culture we have this concept of, quote, rights, unquote. Everybody knows they have, quote, rights, unquote. And those, quote, rights, unquote, protect them against the government. So they're going to understand and see the jury as a right and see those are going to be regular people that protect them from the government. And, of course, Your Honor, this is a question that I think has already been addressed in Duarte y Goreta and Shorty's discussion of it. So you're not writing on a clean slate. But I think the good reason for it is here we have this. I think everybody has this concept that we have, quote, rights, unquote, and those, quote, rights, unquote, protect us from the government. And there's this, those concepts. That's, I don't. And you believe that Mr. Ceja would understand that and it would make any difference? Let me back up. Would he have insisted on being tried by a jury, had the two items you mentioned been explained to him? Is there anything on the record to that effect? There's nothing in the record one way or the other. And that's why I think it's structurally assumed. Do we assume that that's what he would have done? Well, yes, you do, because under the case law, structural error, Your Honor. And frankly, it's certainly possible he would have done that if he realized it was 12 regular people that he participated in selecting to see that at least some of them were people he felt comfortable with. He might very well have done that. What's your best case that this, that the judge's failure to indicate that Mr. Ceja would have helped select the jury and that they would come from the community is structural error. What's your best case for that? Shorty says that. Shorty. Shorty. And there's a case I cite in my opening brief in the standard review section, Laney. Both Laney and Shorty expressly say that an Well, it's invalid. I'm sorry. Say that again. It was a colloquy here with counsel, with the defendant, with the court. And they went over every single thing. And what is the responsibility of the defender, the public defender in this case? He joined in. Your Honor, the they didn't go over every single thing. That's exactly two minor points that they were not discussed in depth, but they they they would have been if the defender had said anything. The defender agreed. He agreed that it was just fine. He did it twice. He subsequently again waived a jury. Right. But what the case law says, Your Honor, is that the defendant has to be advised of these. And I would, Your Honor, the Supreme Court described the aspects of the jury right that I'm talking about as the quote, essential feature, unquote. That's what the Apodaca and Johnson cases describe the idea of having a jury of lay people between the citizen and the government. They describe that as the essential feature of the jury system, far more important than the unanimity requirement, for example. So I don't think these are minor points. They're points that the this court's case law specifically says the defendant should be advised of when there's a salient fact such as a language barrier. And you're really because there was a colloquy and you had defense counsel there. And I think it happened really twice. So everything's OK. You're really arguing a magic words requirement here, are you not? Well, I'm arguing that this court's guidance about the minimum necessary for a colloquy is required. And I'm I'm arguing that these two key aspects of the right need to be explained to a understand that that's part of the right. And yet, based on your construction of this, you're suggesting that even though we don't know what he would have done, you would have to presume that he would have had he would have elected to have a jury. Is that your position? It's really that it's impossible to know one way or the other. And that's why structural error. I think, Your Honor, I don't. But I mean, what what what what if what if defense counsel were to say, you know, he would have selected a jury had he known this? He didn't do that, did he? Well, no, because defense counsel didn't raise this issue. It's being raised on appeal. But the case law says it's subject to de novo review, Your Honor. On the other hand, you can't presume he would have stayed with the judge if he'd been informed. The problem is you can't presume one way or the other. And what the case law says is it's structural error. And because it's such a critical right, you choose the jury option or the assumption that he might have gone with a jury. It's impossible to tell what he would have done. It's speculation. And you don't speculate against him any more than you speculate for him. It's just that the circuit precedent that says that at least two cases I cited to you, you're you're a good lawyer and you read cases very expansively. And I compliment you for being a good lawyer. But I don't I'm struggling with the idea that what you described as error is structural error. Your Honor, I'm quoting shorty shorty and Laney both use facts are quite different. I'm sorry. The facts are quite different. Right. But they both hold that it's structural error. If there's an invalid waiver, then you've got to you do have to have you have to have the situation that is described as structural error to make it structural error. Correct. Fact that there is language in a case that says there's structural error in that case does not necessarily mean that there's structural error in another case. It's based on other facts. Well, that's all I'm saying is I know you would like us to construe the failure to mention these two things as structural error. I just I don't see any cases that say that on those specific facts. Are there any such cases? There's there's two questions, Your Honor. There's the question of whether there's error in the first place and whether it's structural error. There are cases that say anytime there's an invalid jury waiver, it's structural error. There is the question of whether this is error because two of the rights were left out. It's frankly not distinguishable. The only difference between this case and Christiansen is that the salient fact in question was a language barrier instead of mental illness. But Duarte Higuerita says a language barrier is also a salient fact. And then Shorty makes clear that the in-depth quality has to include the four Cochran factors. I want to say any of your you want to save any of your time for rebuttal, counsel? Yes, Your Honor. I was just about to say that. Thank you. Okay, very well. All right. Let's hear from the government, please. Good morning, Your Honors. Andrew Roach for the United States. May it please the court. Your Honors, defendant received a fair trial with effective counsel he personally approved of and in the face of overwhelming evidence, he was convicted fairly and ultimately received a significant variance from his defense. There was no reason for this court to reverse his conviction or his sentence. Turning to the issue of the jury waiver, the defendant here clearly, knowingly, intelligently, and voluntarily waived his right to a jury. This court has held that oral colloquies are acceptable and here there was an oral colloquy. And where we are with the cases is I think the defense is really trying to stretch Duarte much further than it goes. In Duarte, that is a case where it's a Spanish-speaking defendant and all he did was sign an English waiver. He signed a waiver in English and he had a translator and no one was asked any, the court never asked any questions, the court never asked a colloquy of him. And in finding that that waiver was insufficient, they found that there was really not enough evidence to show that defendants personally approved of the waiver. But if you look... My understanding of your opponent's position is that he acknowledges that there was a colloquy. He just says that in that colloquy, that since it was clear that this, that English was not the mother tongue of the defendant, that there was an obligation to explain in addition to what the court did, that a jury would be selected from among his peers and that he would have an opportunity to participate in selecting them. I think he, I believe that he can cite a case to that effect. What's your response to that? My response to that is I think he's advocating for adoption of a magic words test, as your honor mentioned. He's mentioning that you have to hit these four factors, otherwise there will always not be a valid waiver. And I don't think the case law holds that. Duarte, in fact, calls the Cochran factors, which defense council reps has had on. Duarte itself calls those Cochran factors guidelines that the court should consider and uses the word guidelines at page 1002 of the decision. And so the Cochran factors are a necessary for the court to find it. And so in fairness to the defense, we have also said that if you have a reason to think that there's a problem, either because of language or because of a mental condition that might impact understanding that those factors are not just guidance, that they are required. I think that's the Christiansen case. So it seems to me that the question here is whether that test is triggered. Do we have a salient fact to suggest that there's an understanding barrier for some reason? I think that it is true that there's a salient fact that isn't speaking English that requires a more in-depth colloquy. I don't think that in-depth colloquy necessarily requires magic words to be said. I think it requires, there's guidelines that the Cochran factors are that provide on how the court can analyze whether it was sufficiently in-depth. But I don't think necessarily you have to hit all four points. And I think the evidence here, if you look at the totality evidence, it shows that there was enough information for the court to make the decision that defendant's waiver was knowingly intelligent and voluntary. The district court in this case had opportunity before to personally inquire of the defendant and talk to him and ask him questions with respect to his request for counsel. It's also the defendant presented. He was one that had been in this country for a long period of time. And while he was a Spanish speaker, there was no evidence that he didn't understand our legal system. There was no evidence that he didn't understand the criminal justice system. And in fact, the court may express findings based upon its demeanor that the defendant was competent to waive counsel. So I think those are actually entitled to deference, which the case law we've cited in our brief mentions. And I think that's why this case is patently different than the Shorty case or the Christensen case. So in Shorty, before the oral waiver, you have both the defendant and the defendant's attorney saying that the defendant has a low IQ and is learning disabled. You don't have that here. In Christensen, you have questions of competency that are raised before the waiver. You don't have that here. In fact, you have the opposite. You have the court actually have the opportunity to interact, assess, engage the defendant's intelligence. And he came across as really an average defendant in Central District, California. Though he spoke Spanish, that is very common. And I don't think the court should apply a categorical rule that anytime anyone speaks a foreign language, it potentially invalidates any waiver and the court must go down and hit magic words. And so based upon all those facts, I think the court was right in its decision that the oral waiver here was knowingly intelligent and voluntary given and valid. And I think if the court would look to some of its more recent decisions on this issue, the unpublished decisions that we cited, the Resco decision, you look there, you know, the Ninth Circuit, the court didn't analyze the issue in terms of whether four other things. It was really looking to whether the court conducted a sufficiently in-depth colloquy. And here we think it was sufficiently in-depth. I will concede as trial counsel that could have been better. It could have been lengthier, but that doesn't mean it rises to the level of a constitutional violation. Would you address the motion for substitution of counsel? If we conclude that the standard of review for that is abuse of discretion, you still think that the district court did enough? Yes, Your Honor. So with respect to that, I think the case law is clear that the district court did an adequate inquiry. So during the substitution of counsel, at first in the hearing, the defendant actually didn't even ask for any counsel. The defendant first requested that the court help him get into rehab. It was only after the court left the bench and counsel had an opportunity to infer and confer with counsel and talk to him that they came back and the defendant requested new counsel. And the court then quickly asked questions and was quickly able to surmise that there was no conflict. There was no irreconcilable conflict that prevented an adequate defense. It was really defendant's unhappiness with his predicament and refusal to accept responsibility for his actions. I think the case law that the defense cites that a more adequate inquiry is required, they're really not this case. Those are cases where, first of all, no inquiry was held at all. There are lots of cases such as the Velazquez case and other cases where there was a lot of rumblings, filings made that the defendant and their attorney were completely at odds, but the district court never held an inquiry. The other cases are where there are situations where patently visible that there is an irreconcilable conflict and a breakdown in communication. You have cases where the client is calling his attorney a liar or refusing to share a plea agreement or the defendant cannot reach the attorney because the attorney is vacationing in Europe. That's not the case here. Here you have when they had the substitution of counsel, the defendant never mentioned that he had a problem getting a hold of his attorney. He never mentioned that his attorney wasn't doing what he wanted. In fact, the court asked him, tell me what you think is inappropriate. Essentially, it boiled down to the defendant was unhappy that his attorney was advising him to accept a plea offer of 10 years, which was actually very good advice. The case law on that holds that if the court can ask sufficient questions to quickly understand and surmise that it was really just the defendant's unreasonableness and refusal to accept the consequences, that that is an adequate inquiry and there's no conflict. I think the cases there on point really are Mendez-Sanchez and even as Espinoza. Those are cases where it came down to a dispute over a plea agreement and the court held there was an adequate inquiry and there was no irreconcilable conflict. So I think that really goes to show that the district court's denial of substitute counsel was not an abuse of discretion. With respect to the other factor, the court would look at just the extent of the conflict. As I mentioned, trial tactics are not enough or disagreements are bigger. They are not enough to rise to a reconcilable conflict. Really, the court is looking to see whether there was an irreconcilable conflict such that prevented defendant from receiving an adequate defense. Really, there's nothing in the record here to indicate that defendant did not receive an adequate defense. Defendant had capable counsel. He filed pre-trial motions. He took the stand. His testimony was indeed brief, but that just reflects the reality that everything was videotaped and photographed and there was very little wiggle room for defendant to testify. And defense counsel actually gave a strong cross-examination of the government's key witness, the cooperator here. So there was definitely an adequate defense here. It was capable. So there was not a conflict that rose to the issue where the court would find the defendant had a denial of counsel. I think really the issue that defendant is really hanging his hat on is a passing misstatement by the district court. And that's understandable that a district court and lawyers sometimes can be flat-footed and be a little bit loose with the tongue. And the court mentioned here that he saw no inadequacy of counsel or nothing between the client and the attorney. Now, the defendant's attorney did not object and say that's the wrong standard. The defendant's attorney said no, nothing. The defendant's attorney agreed and said there was no conflict. So in that regard, we really don't believe the district court was applying the wrong standard. In fact, there are other cases where the district court, when this court affirms the district court's decision to deny counsel, the district court doesn't actually announce the standard at all. They just do the inquiry and then move on. So I think the defense is reading too much into what is a misstatement of the district judge. And really, if you fairly look at the record, the judge, although it wasn't clearly articulated on the record, he was applying the appropriate standard. He did conduct a sufficient inquiry in asking the defendant what his source of refusal to accept the reality of being the federal criminal justice system. It was defendant's unhappiness with looking at a long sentence compared to the relatively lenient sentences the defendant had received in state court. And that's where the district court was able to make the determination at that point that there was no conflict such that new counsel required. And moving to the third issue that defendant raises, this is an issue I want to raise a little bit, just the sufficiency of the argument. I think defendant essentially raises a plain text argument about the statute. And I don't think his plain text argument of the statute really supports it. If you look, defendant is focusing on the word distribute in Title 21, Section 841. He's looking at the word distribute, and then he's looking further at how the definitions of Title 21 define distribute. And he focuses on the word delivery. And defendant is essentially arguing that every actual delivery is a separate distribution. And neither the plain text law supports that. If you actually look at the statute, in a careful reading of the statute, if you look at Title 21, the definitions, deliver is further defined as delivery means actual, constructive, or attempted transfer. So that means an actual delivery, a constructive delivery, or an attempted delivery. Those could all satisfy the elements of the offense. And here, if you look at the evidence, you can certainly say that what occurred right then and there on the driveway was at least an actual delivery of one ounce of methamphetamine and a constructive delivery of the other ounce of methamphetamine because the defendant had bought, paid for, and was just waiting to pick it up. So we believe the evidence was clearly sufficient to support the verdict in that. And I'll just briefly talk about those cases that the defendant cites. Defendant really doesn't cite an on-point case. A lot of the cases he cites in that regard are really the opposite. Defendant was charged with multiple acts, and they're trying to say it should be one. But the cases he cites as a reply brief for the most on-point cases, including the Morris case and the Weatherd case, those are cases where, yes, the drug transactions occurred in short proximity to each other, but they were still treated separately. And the reason was they were still separate transactions. If you look at those cases, the actual participants agreed that they would do, you know, the initial trial transaction. They exchanged the money for the initial set of drugs. And then shortly thereafter, they did additional, a second deal in short succession. Here, you don't have that. You had one distribution that extended for about 40 minutes. And so we believe that the evidence was sufficient to support the verdict in that regard. And with that, we believe that we believe that this court should affirm the district court's conviction and sentence. Any other questions of counsel by my colleagues? No, thank you. Very well. Hearing none, let's hear from the defense then and rebuttal. Thank you, Your Honor. I'd like to very quickly take the court through the jury waiver cases that I believe control, and then I'll try to quickly address the substitution of counsel issue. I'd just like to take the court through the opinions. First, Duarte Igureta, in the last paragraph before the conclusion, says a language barrier is a, quote, salient fact, unquote, like the mental illness in Christensen. In the same paragraph, Duarte Igureta says that requires a colloquy, and it quotes Christensen. Then in shorty, at pages 966 to 67, the court says the colloquy required by Duarte Igureta is, and I'm quoting, an in-depth inquiry, unquote. And then the shorty opinion says in that same paragraph, and again I'm quoting, quote, an in-depth colloquy we held includes instructing the defendant of the four facts listed in Cochran, unquote. So this court's case law does say that the minimum a colloquy requires is those four facts listed in Cochran. Cochran called them guidelines for the ordinary case, but they're not guidelines when you have one of these salient facts, and Duarte Igureta says one of the salient facts is a language barrier. That case law controls, Your Honor. I do want to briefly address what Judge Forrest brought up, the substitution of counsel issue. The standard of review is abuse of discretion, but it's really de novo when we're talking about the legal standard, because it's by definition an abuse of discretion if the court uses the wrong legal standard. Adequacy of counsel, there's five cases I cite to you that say that's the wrong legal standard. The only way the government tries to get around that is by saying, well, the district judge didn't mean what he said. Well, that's not the way we usually interpret what district judges say. We usually assume they say what they mean and they mean what they say, and I think that's what the court should assume here. So I don't, the government tries to distinguish the cases as being no inquiry at all. That's not right. Walker was insufficient because there was a, quote, limited inquiry, unquote. Nguyen was insufficient because there were a, quote, few cursory questions, unquote. It's not that there was no inquiry at all, it's that there was a minimal inquiry as opposed to an in-depth inquiry like the Velasquez case said there should be. There was nothing approaching an in-depth inquiry here. To the extent that there's not evidence in the record about a conflict between counsel and defendant, well, that's because it wasn't explored. There wasn't enough of an inquiry to bring it out. I cite you two cases in the opening brief, the Bland case and the Torres Rodriguez case, where the court basically recognizes we don't have a record because there wasn't an inquiry made. Counsel, we've let you go over your time, but let me ask my colleagues whether either has additional questions for the defense? No, thank you. Well, we thank you both for your arguments. You're very capable lawyers and your argument has been very helpful to us. The case of United States v. CEJA is submitted. Thank you, Roberts. Thank you, Your Honor.
judges: Kelly, SMITH, FORREST